Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
            kwyant@shea.law

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>ANNE PANTELAS; OLIVER HEMMERS; and INFINITY HEALTH SOLUTIONS, LLC,<br><br>Defendants. | Adversary Case No.: |

**ADVERSARY COMPLAINT**

Plaintiff HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP ("Plaintiff" or "HASelect"), by and through its attorneys of the law firm of Shea Larsen PC, hereby complains and alleges against Defendants ANNE PANTELAS ("Pantelas"), OLIVER HEMMERS ("Hemmers"), and INFINITY HEALTH SOLUTIONS LLC ("IHS" and collectively with Pantelas and Hemmers, "Defendants") as follows:

///

///

## PARTIES

1. Plaintiff HASelect is, and was at all relevant times, a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation, with its principal place of business in Illinois.

2. On information and belief, Defendant Pantelas is, and was at all relevant times, a resident domiciled in the state of Nevada.

3. On information and belief, Defendant Hemmers is, and was at all relevant times, a resident domiciled in the state of Nevada.

4. On information and belief, Defendant IHS is, and was at all relevant times, a Nevada limited liability company.

## JURISDICTION AND VENUE

5. This Adversary Complaint, and the claims herein, are brought pursuant to Bankruptcy Rule 7001 seeking an order, judgment, and decree from this Court to recovery money and property that is the collateral of HASelect.

6. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105 and 506.  This is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  If this adversary proceeding is determined to be noncore, or if this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b) but may not, as a constitutional matter, be adjudicated as such, Plaintiff consents to the entry of final orders or judgments by the bankruptcy judge.

## GENERAL ALLEGATIONS

**A. HASelect Loaned Money to Infinity and Obtained a Security Interest in Infinity's Personal Property.**

7. Beginning in February 2019, HASelect made several advances under a loan to Infinity Capital Management, Inc. ("Infinity"), which were documented through various written loan agreements and promissory notes through which Infinity pledged all of its personal property to HASelect as collateral.

8. HASelect perfected its security interest in all of Infinity's personal property through

the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.

9. On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all related loan documents, the "MLA").

10. The MLA superseded and restated all prior loans made by HASelect to Infinity as well as extended further credit to Infinity.

11. HASelect holds a perfected security interest in all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral"). Specifically, Section 4.1 of the MLA states:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").

12. In entering into the MLA and requesting funds thereunder, Infinity agreed to use the proceeds of the loans it obtained from HASelect to purchase accounts receivable from medical providers.

13. Such accounts receivable generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These accounts receivable are generally secured by liens against such personal injury claims and are typically paid at the time the personal injury claims are settled.

14. HASelect holds a perfected security interest in all accounts receivable purchased by Infinity as Collateral for the indebtedness owed by Infinity under the MLA.

15. Infinity materially breached its obligations under the MLA by, among other things, failing to repay all amounts due and owing thereunder.

**B.    After the Filing of Infinity's Chapter 7 Bankruptcy Case, the Collateral Was Abandoned to HASelect.**

16.    On September 14, 2021 (the "Petition Date"), Infinity filed a voluntary Chapter 7 bankruptcy petition with this Court, commencing Bankruptcy Case No. 21-14486-abl (the "Bankruptcy Case").

17.    On October 15, 2021, the Bankruptcy Court entered an Order in the Bankruptcy Case [ECF No. 96] granting HASelect's Motion for Relief from the Automatic Stay [ECF No. 17] permitting HASelect to immediately take possession and control of the Collateral, wherever it may be located, and to otherwise enforce its security interest and rights in the Collateral consistent with its rights under the MLA and applicable law (the "Relief Order").

18.    The only items excluded by way of the Relief Order were (i) information believed to be in Infinity's possession as of the Petition Date relating to certain accounts receivables owned by HealthPlus Imaging of Texas, LLC ("HealthPlus Imaging") that had been offered for sale to Infinity and (ii) certain accounts receivable over which Tecumseh – Infinity Medical Receivable Fund, LP's ("Tecumseh") claimed ownership.

19.    The Relief Order specifically required Infinity and its officers, directors, and agents to assist HASelect in locating and taking possession of the Collateral and directed them to turn over the Collateral to HASelect.

20.    On October 15, 2021, the Bankruptcy Court also entered an Order in the Bankruptcy Case [ECF No. 97] granting HASelect and the Chapter 7 Trustee's Joint Motion to Approve Abandonment of the Collateral to HASelect [ECF No. 12], requiring Infinity and its officers, directors, and agents to promptly deliver or make available to HASelect any and all Collateral that remains in their possession or control, including all copies of physical documents and electronically stored information constituting Collateral, as well as future Collateral (the "Abandonment Order"). The Abandonment Order contains the same exclusions as the Relief Order.

21.    The Relief Order and the Abandonment Order require that anyone in possession of any of the Collateral turn over the same to HASelect, including any Collateral in the possession of Infinity's officers, directors, and agents.

22.	The Relief Order and the Abandonment Order additionally provide HASelect the right to receive payment relating to the Collateral.

23.	In entering the Relief Order and the Abandonment Order, the Bankruptcy Court retained jurisdiction to interpret and enforce the provisions of such Orders.

**C.	HASelect Is Entitled to Collect an Outstanding Shareholder Loan Owed by Pantelas.**

24.	As defined in the MLA, Collateral includes all rights to payment held by Infinity, which includes all outstanding loans made by Infinity to third parties.

25.	HASelect is informed and believes, and thereon alleges, that Infinity, prior to the Petition Date, regularly made loans to Pantelas in her individual capacity as a shareholder of Infinity the ("Shareholder Loans") before Infinity ceased business operations on or about the Petition Date.

26.	HASelect is informed and believes, and thereon alleges, Pantelas was indebted to Infinity as of the Petition Date in the amount of as much as $380,000 relating to the Shareholder Loans.

27.	By virtue of the Relief Order and Abandonment Order, HASelect is entitled to collect the outstanding balance of the Shareholder Loans from Pantelas.

28.	Pantelas has failed or refuses to pay HASelect the indebtedness due and owing in connection with the Shareholder Loans.

**D.	Hemmers and Pantelas Misappropriated the Proceeds of HASelect's Loans to Infinity.**

29.	In entering into the MLA and requesting funds thereunder, Hemmers and Pantelas represented that the proceeds advanced by HASelect under the MLA would be used for the purchase of accounts receivable by Infinity.

30.	HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas, intentionally misrepresented and overstated the purchase cost and value of accounts receivable purchased by Infinity in requesting advances under the MLA with the intent to induce HASelect to release additional loan proceeds to Infinity.

31.	HASelect reasonably relied on such representations by Hemmers and Pantelas in

advancing funds to Infinity under the MLA.

32. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas caused Infinity to use proceeds advanced by HASelect to pay bonuses and make loans to Hemmers and Pantelas instead of using such funds to pay for the purchase of accounts receivable as represented to HASelect.

33. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas, contrary to their representations to HASelect, misappropriated more than $3 million in proceeds advanced to Infinity by HASelect and used such funds to pay debts owed by Infinity to Coastal Investments, PLC, which is a related entity organized by Hemmers and Pantelas in the Cook Islands ("Coastal").

34. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas were the majority owners of Coastal at the time such payments were received by Coastal and, thus, personally benefited from such payments.

E. **Hemmers and Pantelas Misappropriated HASelect's Collateral.**

35. Pursuant to the MLA, Infinity was required to deposit all proceeds collected on accounts receivable to a dedicated deposit account at First Savings Bank (the "FSB Account") over which HASelect held control of disbursements and from which payments due under the MLA were remitted to HASelect.

36. All such proceeds are included within the Collateral and are subject to HASelect's perfected security interest under the MLA.

37. In or around July 2021, Hemmers and Pantelas intentionally caused Infinity to cease deposits of proceeds collected on accounts receivable to the FSB Account and to, instead, deposit such proceeds in one or more separate Infinity deposit accounts at Nevada State Bank (the "NSB Account").

38. HASelect is informed and believes, and thereon alleges, Pantelas and Hemmers intentionally caused Infinity to divert $100,000 or more in proceeds collected from accounts receivable in which HASelect held a perfected security interest to the NSB Account in violation of

the MLA during July, August, and September 2021.

39. HASelect is informed and believes, and thereon alleges, Pantelas and Hemmers intentionally caused Infinity to use such diverted proceeds to pay personal expenses of Pantelas and Hemmers and to pay other amounts to Pantelas and Hemmers instead of remitting payment to HASelect as required under the MLA.

**F.      Hemmers and Pantelas Transferred Infinity's Business Records and Personal Property to Their New Company, Defendant IHS.**

40. As of the Petition Date, Hemmers and Pantelas were the sole officers, directors, and shareholders of Infinity.

41. On or about September 2, 2020, Hemmers and Pantelas formed Defendant IHS as a Nevada limited liability company.

42. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas are the sole managers of IHS and collectively own 100% of the membership interests in IHS.

43. HASelect is informed and believes, and thereon alleges, IHS did not engage in any material business transaction with any third party prior to the Petition Date.

44. HASelect is informed and believes, and thereon alleges, that shortly before the Petition Date, Hemmers and Pantelas copied and transferred to IHS substantially all of Infinity's electronic business records, including records relating to Infinity's accounts receivable, Infinity's contracts with third parties, Infinity's employees, Infinity's software and computer systems, Infinity's websites and data portals, and Infinity's business operations among other things.

45. On September 2, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Cloud Migration Update" in which he advised Hemmers that he had copied Infinity's electronic records to a new server, was able to run Infinity's proprietary case manager software on the new server, and had attempted to install Infinity's websites on the new server but was unable to do so.

46. On September 10, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "RX Portal on Solutions is working" in which he advised Hemmers that Infinity's websites and customer portals were functional through IHS's new website

www.infinityhealth.solutions and that he had not yet made "the changes we discussed yesterday [to] the company and domain name."

47. One day before the Petition Date, Infinity employee Robert Land sent an email to Hemmers with the subject line "Name Replacements" in which advised that he was updating Infinity's electronic records to add IHS's name in place of Infinity. Specifically, Land advised "'Infinity Health' will be changed to 'Infinity Health Solutions'" and "'Infinity Capital' will be changed to 'Infinity Health Solutions'". Hemmers responded to this email within a few minutes instructing Land to also change "the old name Infinity Health Connections" to "Infinity Health Solutions".

48. On the Petition Date, Infinity employee Robert Land sent an email to Hemmers with the subject line "Move Status" in which he discussed the status of his efforts to copy and transfer Infinity's electronic records to IHS. Among other things, Land represented that Infinity's "[d]atabase has been copied and set up", the "Infinity Health folder has been copied from [Infinity's server]", and "PI and RX Portals with FileManager are working (infinityhealth.com changed to infinityhealth.solutions where appropriate)".

49. All Infinity records copied and transferred to IHS are included within and remain part of the Collateral and are subject to HASelect's perfected security interest under the MLA.

50. HASelect is informed and believes, and thereon alleges, that on or about the Petition Date, Hemmers and Pantelas caused certain equipment owned by Infinity and included within the Collateral, including laptop computers, iPads, hard drives, and telephone equipment, to be moved from Infinity's business office to their personal residence for use by IHS.

51. HASelect is informed and believes, and thereon alleges, that on or about the Petition Date, Hemmers and Pantelas caused other personal property owned by Infinity and included within the Collateral, including software, websites, data portals, and other general intangibles, to be transferred to IHS for use in its business operations.

**G.     Hemmers and Pantelas Are Attempting to Continue Infinity's Business Operations through IHS.**

52. HASelect is informed and believes, and thereon alleges, that on or about the Petition

Date, Hemmers and Pantelas caused IHS to hire substantially all of the employees of Infinity in substantially the same roles and positions in which they served while employed by Infinity.

53. Approximately a week after the Petition Date, Hemmers emailed an "updated company roster" to several former employees of Infinity in which those employees were identified as employees of IHS. This "updated company roster" also included contact information for Infinity's prior lawyer and accountant as well as contact information for individuals associated with several companies that had previously done business with Infinity, including Tecumseh.

54. HASelect is informed and believes, and thereon alleges, that on or about the Petition Date, Hemmers and Pantelas caused all new incoming emails sent to emails address used in connection with Infinity's business operations, including various email addresses ending in @infinitycapital.com and @infinityhealth.com, to be automatically forwarded to similar email addresses ending in @infinityhealth.solutions to be used in connection with IHS's business operations.

55. On October 6, 2021, Hemmers sent an email to Infinity employee Robert Land with the subject line "Corrections to Statement" in which Hemmers asked Land to update the form billing statement used by Infinity to replace Infinity's name and contact information with IHS's name and contact information. Hemmers attached to this email an Infinity billing statement on which he had crossed out Infinity's name and contact information and handwritten IHS's name and contact information.

56. On October 8, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Modified Template Files" in which he advised that he had modified more than 20 document templates previously used by Infinity to include the new logo, address, and phone numbers for IHS.

57. HASelect is informed and believes, and thereon alleges, that on or about the Petition Date, Hemmers and Pantelas caused numerous vendor accounts used by Infinity to be transferred to IHS, including vendor accounts established with AdvanStaffHR, Adobe, GoDaddy, Equiinet, Slack, Tailormade Servers, and others.

58. HASelect is informed and believes, and thereon alleges, that on or about the Petition Date, Hemmers and Pantelas and other IHS employees began contacting third parties that had previously done business with Infinity to request that those third parties enter into new contracts with IHS.

59. HASelect is informed and believes, and thereon alleges, that shortly after the Petition Date, Hemmers and Pantelas caused IHS to begin entering into new written contracts with third parties that had previously entered into written contracts with Infinity, including new contracts with Peachtree Orthopedic, Perimeter Orthopedics, ColdCo Therapies, ExpressCHEX, Georgia Spine and Orthopedics, Paid Care Center of Georgia, and others.  The contracts entered into by IHS with such third parties are substantially similar to the contracts previously entered into between such third parties and Infinity.

60. HASelect is informed and believes, and thereon alleges, that from and after the Petition Date, Hemmers and Pantelas (and other IHS employees) have continued to communicate with and accept payment from various third parties responsible for payment of accounts receivable included in HASelect's Collateral that are subject to the Relief Order and Abandonment Order in interference of HASelect's rights and its efforts to service and collect such accounts receivable.

61. From approximately June 2020 through the Petition Date, Infinity sold a substantial number of accounts receivable to Tecumseh for which Infinity provided collection services following the sale.

62. HASelect is informed and believes, and thereon alleges, that following the Petition Date, Hemmers and Pantelas used IHS to continue providing substantially the same collection services as previously provided by Infinity to Tecumseh.

63. As part of such collection services, Hemmers, Pantelas, and IHS employees exchanged dozens of emails with Tecumseh regarding the status of accounts receivable as well as numerous emails with third parties regarding the acceptance of discounted payments in satisfaction of accounts receivable Infinity sold to Tecumseh.

64. HASelect is informed and believes, and thereon alleges, that following the Petition

Date, Hemmers and Pantelas used IHS to continue selling accounts receivable to Tecumseh as evidenced by a payment from Tecumseh to IHS on October 12, 2021 in the amount of $56,590.89.

65. That same day, Tecumseh principal, Mike Belotz, emailed Hemmers and Pantelas at their new @infinityhealth.solutions email addresses advising that Tecumseh was "going to have to suspend all purchases of receivables from you until the matter of the bankruptcy is resolved."

66. Prior to the Petition Date, Infinity operated a pharmacy card program through its website[1] pursuant to a contract it had entered into with ExpressCHEX, LLC through which Infinity originated and purchased accounts receivable relating to purchases of prescription medication.

67. Shortly after the Petition Date, Hemmers and Pantelas caused IHS to enter into a substantially similar contract with ExpressCHEX, LLC and to begin operating the same pharmacy card program developed by Infinity through IHS's website.[2]

68. HASelect is informed and believes, and thereon alleges, that following the Petition Date, Hemmers and Pantelas added IHS's name, logo, and contact information to marketing materials developed by Infinity and used such materials, as modified, to solicit business for IHS.

69. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas, in causing Infinity to file its chapter 7 case, intended to avoid repayment of debts owed to HASelect under the MLA while simultaneously converting valuable assets of Infinity (and HASelect's Collateral) and using such assets to effectively transfer Infinity's business operations to IHS.

70. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas formed IHS for the specific purpose of continuing the business operations of Infinity under a different name in order to hinder, delay, or defraud creditors of Infinity.

71. HASelect is informed and believes, and thereon alleges, IHS is a mere continuation or successor of Infinity, and utilizes the same employees, equipment, electronic records, documents, customer lists, marketing materials, and business model.

---

[1] Available at https://web.archive.org/web/20210225070654/https://infinityhealth.com/pharmacy-card/ (last visited February 24, 2022).

[2] Available at https://infinityhealthrx.com (last visited February 24, 2022).

**H.  Hemmers and Pantelas Have Attempted to Conceal IHS's Continuation of Infinity's Business Operations.**

72. HASelect is informed and believes, and thereon alleges, Hemmers and Pantelas, in attempting to conceal their wrongful conduct in transferring Infinity's electronic records and business operations to IHS, deleted emails and other electronic documents from computers surrendered to HASelect pursuant to the Relief Order and the Abandonment Order.

73. For example, the "Deleted Items" folders in the Infinity email accounts of Hemmers and Pantelas (and most other Infinity employees) were empty when Infinity's computers were abandoned to HASelect, indicating that emails were permanently deleted from those email accounts on or around the Petition Date.

74. Additionally, the above-referenced emails exchanged between Hemmers and Robert Land on and around the Petition Date as well as many other similar emails, were deleted from Hemmers' Infinity email account prior to the abandonment of Infinity's computers to HASelect.

75. HASelect is informed and believes, and thereon alleges, that, in a further attempt to conceal their wrongful conduct through IHS, Hemmers and Pantelas made several false statements while testifying under oath at Infinity's § 341 meeting of creditors on October 27, 2021.

76. For example, when asked if IHS had entered into any contract with any party, Hemmers and Pantelas both answered "no". In fact, as of October 27, 2021, IHS had already entered into several contracts (all signed by Pantelas as manager of IHS) with parties that had previously done business with Infinity, including a contract with Peachtree Orthopedic Clinic, P.A. dated October 1, 2021, a contract with ExpressCHEX, LLC dated October 6, 2021, a contract with Georgia Spine and Orthopedics dated October 11, 2021, and several others.

77. Similarly, when asked if they had any connection to a company named Buena Vista (a fictitious firm named used by ExpressCHEX, LLC in its dealings with Infinity), both Hemmers and Pantelas answered "no" with the exception of Infinity's pre-petition relationship with Buena Vista. Hemmers and Pantelas failed to disclose that IHS had entered into a new contract with ExpressCHEX, LLC (again doing business as Buena Vista Medical Services) on October 6, 2021 and had purchased accounts receivable from ExpressCHEX, LLC after the Petition Date.

78. When asked if they were involved in or had any connection to any "medical lien business" other than Infinity, both Hemmers and Pantelas answered "no". In fact, as of October 27, 2021, IHS had entered into several contracts with medical providers relating to the purchase of accounts receivable secured by liens against personal injury claims, had sold a substantial number of such accounts receivable to Tecumseh, and had provided collection services to Tecumseh with respect to accounts receivable sold to Tecumseh by Infinity.

79. When asked if IHS used any of the same software systems that were used by Infinity, Hemmers answered "no". In fact, as of October 27, 2021, IHS was using the same proprietary case manager software, websites, and customer portals that had been developed and used by Infinity.

80. When asked if IHS was in possession of any electronic records relating to Infinity, Hemmers and Pantelas testified that the only such records in IHS's possession were "backups" stored on a single hard drive that was removed from Infinity's office around the Petition Date and had not been connected to any computer system used by IHS. In fact, as of October 27, 2021, substantially all of the electronic records stored on Infinity's data servers had been copied to new servers set up by Hemmers and Pantelas for use by IHS.

81. When asked if they were involved in the management of any portfolio of accounts receivable, both Hemmers and Pantelas testified they were not. In fact, as of October 27, 2021, IHS was providing collection services, including negotiating discounted payment amounts, relating to accounts receivable Infinity had sold to Tecumseh.

82. When asked if IHS's employees were communicating with parties that had previously done business with Infinity, both Hemmers and Pantelas answered "no". In fact, as of October 27, 2021, IHS's employees, including Hemmers and Pantelas, were actively communicating with several parties that had previously done business with Infinity.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

83. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

84. A dispute exists between HASelect and Defendants that is ripe for adjudication as to the priority of their respective claimed interests in the Disputed Accounts.

85. HASelect is entitled to a declaration that (i) Defendants have no right to possession of the Collateral or copies or reproductions thereof, (ii) Defendants must immediately cease and refrain from any and all use of HASelect's Collateral, and (iii) Defendants must immediately surrender all Collateral in their possession to HASelect in accordance with the Relief Order and the Abandonment Order.

86. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## SECOND CAUSE OF ACTION

### (Conversion)

87. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

88. HASelect is informed and believes Defendants are in possession of and exercising control over HASelect's Collateral, including, but not limited to equipment, business records, software, and other general intangibles owned by Infinity that Defendants are using to continue Infinity's business operations through IHS.

89. HASelect holds a perfected security interest in such Collateral and is entitled to immediate possession of the same pursuant to the Relief Order and the Abandonment Order.

90. HASelect has not authorized or granted Defendants permission to use HASelect's Collateral. As such, Defendants' use of the Collateral is wrongful.

91. Defendants' wrongful use of HASelect's Collateral in exclusion or defiance of HASelect's rights and interests in the Collateral.

92. HASelect is informed and believes that the value of the Collateral misappropriated by Defendants exceeds $75,000. As such, Defendants' actions have caused HASelect to suffer damages in excess of $75,000.

93. It was necessary for HASelect to engage the services of an attorney to bring this

claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

94. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

95. HASelect holds a perfected security interest in the Collateral and is entitled to immediate possession of the same pursuant to the Relief Order and the Abandonment Order.

96. Notwithstanding the Abandonment Order and demands by HASelect for the surrender of all Collateral, Defendants continue to retain and use HASelect's Collateral for their own benefit as described herein.

97. It is against equity and good conscience to permit Defendants to retain or use for their benefit HASelect's Collateral.

98. Defendants' actions have caused HASelect to suffer damages in excess of $75,000.

99. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## FOURTH CAUSE OF ACTION

### (Claim and Delivery)

100. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

101. The Relief Order and the Abandonment Order, as well as the MLA, require that all Collateral be turned over to HASelect.

102. HASelect holds a perfected security interest in the Collateral and is entitled to immediate possession of the same pursuant to the Abandonment Order.

103. Despite HASelect's demands, Defendants refuse to surrender possession of all of the Collateral to HASelect.

104. Defendants have offered no justification or explanation for their refusal to surrender the Collateral to HASelect. Rather, Defendants have attempted to conceal their ongoing possession

and use of the Collateral.

105. The Collateral has not been taken for a tax, assessment, or fine pursuant to any statute, or seized under an execution or an attachment against the property of HASelect.

106. HASelect is entitled to preliminary and permanent writs of possession compelling Defendants to immediately cease use and surrender possession of the Collateral.

107. Defendants' actions have caused HASelect to suffer damages in excess of $75,000.

108. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

109. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

110. A valid and enforceable contract existed between Pantelas and Infinity with respect to the Shareholder Loan.

111. By way of the MLA and the orders entered in the Bankruptcy Case, HASelect has succeeded in Infinity's rights to repayment of amounts owed by Pantelas in connection with the Shareholder Loan.

112. HASelect is informed and believes that Infinity fully performed its obligations to Pantelas or was excused from performance as a result of Pantelas' material breach.

113. Pantelas breached the agreement by failing to repay the amounts due and owing in connection with the Shareholder Loan.

114. Pantelas' actions have caused HASelect to suffer damages in excess of $75,000.

115. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## SIXTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

116. HASelect incorporates the allegations set forth in the other sections of this Adversary

Complaint as if set forth at length herein.

117. Defendants Hemmers and Pantelas made intentional false representations in their capacities as individuals and as agents of Infinity concerning Infinity's use of loan proceeds received from HASelect as well as the cost and value of accounts receivable pledged as collateral under the MLA.

118. Specifically, in requesting advances under the MLA, Hemmers and Pantelas (i) intentionally and repeatedly inflated the cost of accounts receivable purchased by Infinity by 20% or more, (ii) intentionally misrepresented that the value of such accounts receivable was equal to the gross billed amounts of such accounts receivable even though Hemmers and Pantelas knew their true value to be far less than the gross billed amounts, and (iii) intentionally misrepresented the purposes for which Infinity intended to use funds advanced by HASelect under the MLA.

119. For example, in or around December 2019, Hemmers and Pantelas requested that HASelect advance funds in the amount of $3,400,000 to Infinity and misrepresented that such funds would be used by Infinity solely to purchase accounts receivable pursuant to a contract entered into between Infinity and HealthPlus Imaging. In making this request, Hemmers and Pantelas represented to HASelect that the value of the accounts receivable to be purchased by Infinity was at least $6,800,000. At the time the request was made, Hemmers and Pantelas knew the actual purchase price due and payable under Infinity's contract with HealthPlus Imaging was only $2,500,000 and that the actual value of such accounts receivable was far less than $6,800,000. Hemmers and Pantelas intentionally misrepresented the cost and value of such accounts receivable to HASelect with the fraudulent intent to induce HASelect to advance additional funds to Infinity above and beyond the amount HASelect would have advanced based on the true cost and true value of such accounts receivable.

120. Moreover, upon receipt of the loan funds requested from HASelect for the purchase of accounts receivable from HealthPlus Imaging, Hemmers and Pantelas caused Infinity to pay only $1,750,000 of the $2,500,000 purchase price to HealthPlus Imaging. Hemmers and Pantelas then used the remaining proceeds advanced by HASelect to pay bonuses to themselves, to fund loans

made by Infinity to Pantelas, and to pay unsecured debts owed by Infinity to third parties, including Coastal.

121. HASelect justifiably relied on Hemmers and Pantelas' misrepresentations and was unaware of Hemmers and Pantelas' misrepresentations concerning the cost and value of accounts receivable purchased by Infinity or their intent to use loan funds for purposes other than purchasing accounts receivable.

122. Hemmers and Pantelas' actions have caused HASelect to suffer damages in excess of $75,000.

123. Based on the fraudulent actions of Defendant Pantelas and Defendant Hemmers fraudulent actions, punitive damages are also appropriate.

124. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

## SEVENTH CLAIM FOR RELIEF

### (Permanent Injunction)

125. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

126. Based on the foregoing, HASelect is reasonably likely to succeed on the merits of its claims that Defendants have wrongfully taken and misappropriated HASelect's Collateral.

127. In the event Defendants are not prohibited from further using or transferring the Collateral, HASelect will face irreparable harm including, but not limited to, HASelect's continued dispossession of the Collateral and Defendants continued use of the Collateral to continue Infinity's business operations through IHS.

128. Defendants have no right to possession or use of the Collateral.

129. HASelect's relative hardship in not having the Collateral returned substantially outweighs Defendants' hardship in being required to turnover the Collateral, which this Court has already ordered be returned to HASelect.

130. The public's interest also weighs in favor of granting an injunction because the public

has an interest in ensuring that court orders are respected.

131. It was necessary for HASelect to engage the services of an attorney to bring this claim. As such, HASelect is entitled to recover its reasonable costs and attorney fees.

### REQUEST FOR RELIEF

WHEREFORE, HASelect respectfully requests that the Court grant the following relief:

1. Entry of a declaratory judgment determining that (i) Defendants have no right to possession of the Collateral or copies or reproductions thereof, (ii) Defendants must immediately cease and refrain from any and all use of HASelect's Collateral, and (iii) Defendants must immediately surrender all Collateral in their possession to HASelect in accordance with the Relief Order and the Abandonment Order

2. Entry of a preliminary and permanent injunction prohibiting Defendants from using or otherwise disposing of HASelect's Collateral;

3. Entry of judgment awarding HASelect its damages suffered as a result of the foregoing allegations, as well as punitive damages;

4. Entry of judgment awarding HASelect its reasonable attorney fees and costs incurred in bringing this action; and

5. Entry of orders providing such other and further relief as the Court deems just and proper.

DATED this ___ day of June 2022.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*