Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  blarsen@shea.law
          kwyant@shea.law

*Attorneys for HASelect-Medical Receivables*
*Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES<br>LITIGATION FINANCE FUND<br>INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>ANNE PANTELAS; OLIVER HEMMERS; and<br>INFINITY HEALTH SOLUTIONS LLC,<br><br>Defendants. | Adversary Case No.: 22-01109-abl<br><br><br>Hearing Date: OST Requested<br>Hearing Time: OST Requested |

**MOTION FOR PRELIMINARY INJUNCTION TO PROHIBIT DEFENDANTS FROM USING OR TRANSFERRING COLLATERAL**

Plaintiff HASelect-Medical Receivables Litigation Finance Fund International SP ("Plaintiff" or "HASelect"), by and through its counsel, Shea Larsen PC, hereby submits this Motion for Preliminary Injunction (the "Motion") seeking to preclude Defendants Anne Pantelas ("Pantelas"), Defendant Oliver Hemmers ("Hemmers"), and Infinity Health Solutions, LLC ("Defendant IHS" and collectively with Pantelas and Hemmers, "Defendants") from continuing to use HASelect's Collateral (defined below) and to compel Defendants to turn over to HASelect all

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Collateral in their possession as required by this Court's previously-entered orders in Debtor Infinity Capital Management, Inc's ("Debtor" or "Infinity") Bankruptcy Case, Case No. 21-14486-abl (the "Bankruptcy Case").

This Motion is made pursuant to Fed. R. Civ. P. 65 and Bankruptcy Rule[1] 7065 and is made and based upon the following memorandum of points and authorities as well as the exhibits attached hereto, the papers and pleadings on file, judicial notice of which is requested,[2] and any oral argument that the Court will entertain at the time of hearing the Motion.

## PRELIMINARY STATEMENT

Since approximately February 19, 2019, HASelect has held a perfected security interest in substantially all of Infinity's personal property, including, but not limited to, all accounts receivable, books and records, products, inventory, and equipment as collateral for a loan on which HASelect is presently owed in excess of $16 million. During the Bankruptcy Case, the Court entered orders granting HASelect relief from stay and abandoning all such Collateral to HASelect. These orders expressly required Infinity and its officers to promptly deliver or make available to HASelect any and all Collateral that remained in their possession, including all documents and electronically stored information constituting Collateral, as well as any future proceeds or Collateral that they may come to possess.

During discovery in the Bankruptcy Case and related Adversary Proceeding against Tecumseh-Infinity Medical Receivables Fund, LP, Adversary Proceeding No. 21-01167-abl (the "Tecumseh Adversary Proceeding"), HASelect discovered that Defendants Pantelas and Hemmers, in the defiance of this Court's orders, surreptitiously converted and retained possession of Debtor Infinity's business records and other personal property included in HASelect's Collateral. More

---

[1] Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to "Local Rules" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

[2] This Court should take judicial notice of all materials appearing on the docket in the above-captioned Chapter 7 Bankruptcy Case and related adversary proceedings. *See* FRE 201(b); *see also U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case, and public records.") (cited by *In re Fikrou*, No. 19-13180-mkn, 2019 Bankr. LEXIS 2613, n. 2 (D. Nev. Bankr. Aug. 8, 2019)).

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

importantly, Pantelas and Hemmers continue to use this Collateral as they attempt to resume Infinity's business operations through their new company IHS, which utilizes the same employees, proprietary software and systems, business model, vendors, and contracts as Infinity. In other words, IHS is an obvious continuation of Infinity.

Defendants must be enjoined from their continued wrongful possession and use of HASelect's Collateral. Indeed, HASelect enjoys a high likelihood of success on the merits of its declaratory relief, conversion, unjust enrichment, and claim and delivery claims seeking a finding that Defendants have no right to possess or make use of the Collateral. Additionally, the possibility of irreparable injury to HASelect exists if Defendants continue to use their unlawful use of the Collateral. The balance of hardships easily tips in favor of HASelect as HASelect is being deprived its bargained-for Collateral. In contrast, denying Defendants their use of the Collateral only prevents them from wrongfully possessing and using the Collateral to improperly continue Infinity's business operations. Defendants cannot be allowed to defraud creditors by placing Infinity in bankruptcy and then continuing an identical business under a slightly different name in an attempt to avoid Infinity's obligations to its creditors. As such, public policy also favors granting the Motion.

For these reasons, as expressed more fully below, the Motion should be granted, and a preliminary injunction should issue requiring Defendants to immediately turn over all Collateral (including all copies thereof) in their possession (as this Court previously ordered) and to cease all use of the same.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are FRCP 65, and Bankruptcy Rule 7065.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## STATEMENT OF FACTS

**A.    HASelect Loaned Money to Infinity and Obtained a Security Interest in Infinity's Personal Property.**

1.    Beginning in February 2019, HASelect made a series of loans to Infinity that were documented through various written loan agreements and promissory notes through which Infinity pledged substantially all of its personal property, including accounts receivable, to HASelect as collateral for such loans.[3]

2.    HASelect perfected its security interest in all of Infinity's personal property through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.[4]

3.    On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all prior and related loan documents, the "MLA"), which amended and superseded all prior written loan agreements and promissory notes entered into between HASelect and Infinity as well as extended further credit to Infinity.[5]

4.    HASelect holds a perfected security interest in all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral").  Specifically, Section 4.1 of the MLA states:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted

---

[3] *See* Declaration of Michael Griffin, ¶ 5, filed in the Tecumseh Adversary Proceeding, Case No. 21-01167-abl, as ECF No. 54 (the "Griffin Declaration").

[4] *Id.* at ¶ 6.  A copy of this UCC-1 filing is on file in the Tecumseh Adversary Proceeding, Case No. 21-01167-abl as ECF No. 57-2.

[5] *See* Griffin Declaration, ¶ 7.  A copy of the MLA is on file in the Tecumseh Adversary Proceeding, Case No. 21-01167-abl as ECF No. 57-1.

a lien or security interest, is referred to herein, collectively, as the "Collateral").[6]

5.    Pursuant to the MLA, Infinity agreed to use the loan proceeds it received from HASelect to purchase accounts receivable from medical providers.[7]

6.    Such accounts receivable generally arose from medical treatment or prescription medication provided to individuals who were injured in accidents and had asserted personal injury claims against third parties.  These accounts receivable are secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled.[8]

7.    From February 2019 through April 2020, HASelect advanced loan proceeds totaling approximately $13.7 million to Infinity, which was obligated under the MLA to use such proceeds to purchase accounts receivable.[9]

**B.    After the Filing of Infinity's Chapter 7 Bankruptcy Case, the Collateral Was Abandoned to HASelect.**

8.    On September 14, 2021 (the "Petition Date"), Infinity filed a voluntary Chapter 7 bankruptcy petition with this Court, commencing the Bankruptcy Case.

9.    On October 15, 2021, the Court in the Bankruptcy Case entered an Order granting HASelect's Motion for Relief from the Automatic Stay permitting HASelect to immediately take possession and control of the Collateral, wherever it may be located, and to otherwise enforce its security interest and rights in the Collateral consistent with its rights under the MLA and applicable law (the "Relief Order").[10]

10.    The only items excluded by way of the Relief Order were non-Collateral Confidential Information (as defined in HealthPlus Imaging of Texas, LLC's ("HealthPlus") Limited Objection [ECF No. 77]) in Infinity's possession relating to receivables owned by HealthPlus and the Tecumseh Receivables (as defined by Party in Interest Tecumseh – Infinity Medical Receivable Fund, LP's ("Tecumseh") Objection [ECF No. 82]).

---

[6] *See id.* at § 4.1.

[7] *See id.* at § 3.2.

[8] *See* Griffin Declaration at ¶ 11.

[9] *See* Griffin Declaration, ¶ 13.

[10] *See* ECF No. 96 in the Bankruptcy Case.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

11.     The Relief Order specifically required Infinity and its officers, directors, and agents to assist HASelect in locating and taking possession of the Collateral and directed to turn over the same to HASelect.

12.     On October 15, 2021, the Court in the Bankruptcy Case also entered an Order granting HASelect's and the Chapter 7 Trustee's Joint Motion to Approve Abandonment of the Collateral to HASelect, requiring Infinity and its officers, directors, and agents to promptly deliver or make available to HASelect any and all Collateral that remains in their possession or control, including all copies of physical documents and electronically stored information constituting Collateral, as well as future Collateral (the "Abandonment Order").[11]

13.     The Abandonment Order contained the same exclusions as did the Relief Order.

14.     Contained in these orders are mandates that anyone in possession of any of the Collateral turn over the same to HASelect, including any Collateral in the possession of Infinity's officers, directors, and agents.[12]

15.     These orders additionally provide HASelect the right to receive payment relating to the Collateral.[13]

**C.    Hemmers and Pantelas Are Attempting to Continue Infinity's Business Operations through a New Company, Defendant IHS, and Are Wrongfully Using HASelect's Collateral in the Process.**

16.     As of the Petition Date, Hemmers and Pantelas were the sole officers, directors, and shareholders of Infinity.[14]

17.     On or about September 2, 2020, Hemmers and Pantelas formed Defendant IHS as a Nevada limited liability company.[15]   Hemmers and Pantelas are the sole managers for Defendant

[11] *See* ECF No. 97 in the Bankruptcy Case.

[12] *See* ECF Nos. 96 and 97 in the Bankruptcy Case.

[13] *See id.*

[14] *See* Nevada Secretary of State's website for Infinity Capital Management, available at https://esos.nv.gov/Entity Search/BusinessInformation.

[15] *See* Nevada Secretary of State's website for Infinity Health Solutions LLC, available at https://esos.nv.gov/Entity Search/BusinessInformation.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

IHS.[16]

18.     Shortly before the Petition Date, Hemmers and Pantelas copied and transferred to IHS substantially all of Infinity's electronic business records, including records relating to Infinity's accounts receivable, Infinity's contracts with third parties, Infinity's employees, Infinity's computer systems, Infinity's websites, and Infinity's business operations among other things.

19.     On September 2, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Cloud Migration Update" in which he advised Hemmers that he had copied Infinity's electronic records to a new server, was able to run Infinity's proprietary case manager software on the new server, which requires access to Infinity's database of purchased accounts, and had attempted to install Infinity's websites on the new server but was unable to do so.[17]

20.     On September 10, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "RX Portal on Solutions is working" in which he advised Hemmers that Infinity's websites and customer portals were functional through IHS's new website www.infinityhealth.solutions and that he had not yet made "the changes we discussed yesterday [to] the company and domain name."[18]

21.     On September 13, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Name Replacements" in which advised that he was updating Infinity's electronic records to add IHS's name in place of Infinity.  Specifically, Land advised "'Infinity Health' will be changed to 'Infinity Health Solutions'" and "'Infinity Capital' will be changed to 'Infinity Health Solutions.'"  Hemmers responded to this email within a few minutes instructing Land to also change "the old name Infinity Health Connections" to "Infinity Health Solutions."[19]

22.     On the Petition Date, Infinity employee Robert Land sent an email to Hemmers with the subject line "Move Status" in which he discussed the status of his efforts to copy and transfer Infinity's electronic records to IHS.  Among other things, Land represented that Infinity's

---

[16] *Id.*

[17] *See* email attached hereto as Exhibit 1.

[18] *See* emails attached hereto as Exhibit 2.

[19] *See* emails attached hereto as Exhibit 3.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

"[d]atabase has been copied and set up", the "Infinity Health folder has been copied from [Infinity's server]", and "PI and RX Portals with FileManager are working (infinityhealth.com changed to infinityhealth.solutions where appropriate)."[20]

23.    On or about the Petition Date, Hemmers and Pantelas caused all new incoming emails sent to emails address used in connection with Infinity's business operations, including various email addresses ending in @infinitycapital.com and @infinityhealth.com, to be automatically forwarded to similar email addresses ending in @infinityhealth.solutions to be used in connection with IHS's business operations.[21]

24.    Following the Petition Date, Hemmers and Pantelas (and other IHS employees) continued to communicate with and accept payment from various third parties responsible for payment of accounts receivable included in HASelect's Collateral that are subject to the Relief Order and Abandonment Order in interference of HASelect's rights and its efforts to service and collect such accounts receivable.[22]

25.    Approximately a week after the Petition Date, Hemmers emailed an "updated company roster" to several former employees of Infinity in which those employees were identified as employees of IHS.  This "updated company roster" also included contact information for Infinity's prior lawyer and accountant as well as contact information for individuals associated with several companies that had previously done business with Infinity, including Tecumseh.[23]

26.    On September 26, 2021, Hemmers sent an email to Land asking that Land "fix the Rx Portal" to which Hemmers attached a screen shot of Infinity's pharmacy portal on which Infinity's name had been changed to IHS but an award image containing Infinity's name remained. Land responded the following day that he had removed the award image containing Infinity's Name from the pharmacy portal.[24]

---

[20] *See* email attached hereto as Exhibit 4.

[21] *See* emails attached hereto as Exhibit 5.

[22] *See* emails attached hereto as Exhibit 14.

[23] *See* email attached hereto as Exhibit 6.

[24] *See* emails attached hereto as Exhibit 7.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

27.     On October 6, 2021, Hemmers sent an email to Infinity employee Robert Land with the subject line "Corrections to Statement" in which Hemmers asked Land to update the form billing statement used by Infinity to replace Infinity's name and contact information with IHS's name and contact information.  Hemmers attached to this email an Infinity billing statement on which he had crossed out Infinity's name and contact information and handwritten IHS's name and contact information.[25]

28.     On October 8, 2021, Infinity employee Robert Land sent an email to Hemmers with the subject line "Modified Template Files" in which he advised that he had modified more than 20 document templates previously used by Infinity to include the new logo, address, and phone numbers for Defendant IHS.[26]

29.     All Infinity electronic records copied and transferred to IHS are included within and remain a part of the Collateral and are subject to HASelect's perfected security interest under the MLA.[27]

30.     Hemmers and Pantelas also caused certain equipment owned by Infinity and included within the Collateral, including laptop computers, iPads, hard drives, and telephone equipment, to be moved from Infinity's business office to Hemmers' personal residence for use by Defendant IHS.[28]

31.     Emails also show that on or about the Petition Date, Hemmers and Pantelas caused numerous vendor accounts used by Infinity to be transferred to Defendant IHS, including vendor accounts established with AdvanStaffHR, Adobe, GoDaddy, Equiinet, Slack, Tailormade Servers, and others.[29]

32.     Shortly after the Petition Date, Hemmers and Pantelas caused IHS to begin entering into new written contracts with third parties that had previously entered into written contracts with Infinity, including new contracts with Peachtree Orthopedic, ExpressCHEX, Georgia Spine and

---

[25] *See* emails attached hereto as Exhibit 8.

[26] *See* email attached hereto as Exhibit 9.

[27] *See* MLA, § 4.1.

[28] *See* text messages attached hereto as Exhibit 10.

[29] *See* emails attached hereto as Exhibit 11.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Orthopedics, Perimeter Orthopedics, Pain Care Center of Georgia, and others.[30]

33.     From approximately June 2020 through the Petition Date, Infinity sold a substantial number of accounts receivable to Tecumseh for which Infinity provided collection services following the sale.  Following the Petition Date, Hemmers and Pantelas used IHS to continue providing substantially the same collection services as previously provided by Infinity to Tecumseh.  As part of such collection services, Hemmers, Pantelas, and other IHS employees exchanged emails with Tecumseh and various third parties regarding the status of accounts receivable along with several emails regarding the acceptance of discounted payments in satisfaction of accounts receivable Infinity sold to Tecumseh.[31]

34.     Following the Petition Date, Hemmers and Pantelas also used IHS to continue selling accounts receivable to Tecumseh as evidenced by a payment from Tecumseh to IHS on October 12, 2021 in the amount of $56,590.89.[32]  That same day, Tecumseh principal, Mike Belotz, emailed Hemmers and Pantelas at their new @infinityhealth.solutions email addresses advising that Tecumseh was "going to have to suspend all purchases of receivables from you until the matter of the bankruptcy is resolved."[33]

35.     Prior to the Petition Date, Infinity operated a pharmacy card program through its website[34] pursuant to a contract it had entered into with ExpressCHEX, LLC through which Infinity originated accounts relating to purchases of prescription medication.[35]

36.     Shortly after the Petition Date, Hemmers and Pantelas caused IHS to enter into a substantially similar contract with ExpressCHEX, LLC[36] and to begin operating the same pharmacy

---

[30] Copies of prepetition contracts between Infinity and the above-named third parties are attached hereto as Exhibit 12.  Copies of post-petition contracts between IHS and the above-named third parties are attached hereto as Exhibit 13.

[31] See emails attached hereto as Exhibit 14.

[32] See Exhibit 15.

[33] See email attached hereto as Exhibit 16.

[34] Available at https://web.archive.org/web/20210225070654/https://infinityhealth.com/pharmacy-card/ (last visited February 24, 2022).

[35] A copy of Infinity's prepetition contract with ExpressCHEX, LLC is attached hereto as Exhibit 17.

[36] A copy of IHS's post-petition contract with ExpressCHEX, LLC is attached hereto as Exhibit 18.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

card program developed by Infinity through IHS's website.[37]

37.    Following the Petition Date, Hemmers and Pantelas added IHS's name, logo, and contact information to marketing materials developed by Infinity and used such materials, as modified, to solicit business for IHS.[38]

38.    Based on the foregoing, HASelect believes that Hemmers and Pantelas, in causing Infinity to file its chapter 7 case, intended to avoid repayment of debts owed to HASelect under the MLA while simultaneously converting valuable assets of Infinity in which HASelect holds a perfected security interest and using such assets to effectively transfer Infinity's business operations to IHS.

**D.    Hemmers and Pantelas Have Actively Concealed IHS's Business Operations and Use of the Collateral.**

39.    In an effort to conceal the nature of IHS's business operations and its ongoing use of the Collateral, Hemmers and Pantelas deleted emails and other electronic documents from computers surrendered to HASelect pursuant to the Relief Order and the Abandonment Order.  For example, the above-referenced emails exchanged between Robert Land and Hemmers, as well as many other similar emails, were deleted from Hemmers' Infinity email account prior to the surrender of Infinity's computers to HASelect and were excluded from records produced by Hemmers and Pantelas in response to subpoenas from HASelect.

40.    Hemmers and Pantelas also made several misrepresentations under oath while testifying at Infinity's 341 meeting of creditors on October 27, 2021.

41.    For example, when asked if IHS had entered into any contract with any party, Hemmers and Pantelas both unequivocally testified that IHS had not entered into any contract.[39]  In fact, as of October 27, 2021, IHS had already entered into several contracts (all signed by Pantelas as manager of IHS) with parties that had previously done business with Infinity, including a contract with Peachtree Orthopedic Clinic, P.A. dated October 1, 2021, a contract with ExpressCHEX, LLC

---

[37] Available at https://infinityhealthrx.com (last visited February 24, 2022).

[38] *See* emails attached hereto as Exhibit 19; *see* Exhibit 10.

[39] *See* Transcript of October 27, 2021 Meeting of Creditors (the "Transcript") attached hereto as Exhibit 20, p. 48, lines 18-25.

dated October 6, 2021, a contract with Georgia Spine and Orthopedics dated October 11, 2021, and several others.[40]

42.    Similarly, when asked if they had any connection to a company named Buena Vista (a fictitious firm named used by ExpressCHEX, LLC in its dealings with Infinity), both Hemmers and Pantelas answered "no" with the exception of Infinity's pre-bankruptcy relationship with Buena Vista.[41]  Again, this response was false.  In fact, IHS had already entered into a new contract with ExpressCHEX, LLC (again doing business as Buena Vista Medical Services) on October 6, 2021 (signed by Pantelas as manager of IHS) on substantially the same terms and conditions as Infinity's prior contract with ExpressCHEX, LLC, and IHS had purchased accounts from ExpressCHEX, LLC after Infinity's bankruptcy filing.[42]

43.    When asked if they were involved in or had any connection to any "medical lien business" other than Infinity, both Hemmers and Pantelas answered "no".[43]  In fact, as of October 27, 2021, IHS had entered into several contracts with medical providers relating to the purchase of accounts receivable secured by liens against personal injury claims, had sold a substantial number of such accounts receivable to Tecumseh, and had provided collection services to Tecumseh with respect to accounts receivable sold to Tecumseh by Infinity.[44]

44.    When asked if IHS used any of the same software systems that were used by Infinity, Hemmers answered "no".[45]  In fact, prior to October 27, 2021, IHS was using the same proprietary case management software, websites, and customer portals that had been developed and used by Infinity.[46]

45.    When asked if they were involved in the management of any portfolio of accounts

---

[40] *See* Exhibit 13.

[41] *See* Transcript (Exhibit 20), pp. 27-28.

[42] *See* Exhibit 18.

[43] *See* Transcript (Exhibit 20), p. 46, lines 8-12.

[44] *See* Exhibits 13, 14, 15, and 16.

[45] *See* Transcript (Exhibit 20), p. 52, lines 6-9.

[46] *See* Exhibits 1, 2, 3, 4, 9, and 11.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

receivable, both Hemmers and Pantelas testified they were not.[47]  In fact, prior to October 27, 2021, IHS was actively providing collection services, including negotiating discounted payment amounts, relating to accounts receivable Infinity had sold to Tecumseh.[48]

46.     When asked if IHS's employees were communicating with parties that had previously done business with Infinity, both Hemmers and Pantelas answered "no".[49]  In fact, prior to October 27, 2021, IHS's employees, including Hemmers and Pantelas, were actively communicating with several parties that had previously done business with Infinity.[50]

47.     When asked if IHS was in possession of any electronic records relating to Infinity, Hemmers and Pantelas both testified that it was not and that the only such records in their possession were "backups" stored on a single hard drive that was removed from Infinity's office on or around September 14, 2021, which Hemmers testified had not been connected to any computer system used by IHS.[51]  Again, this sworn testimony was false.  As evidenced by the emails referenced above, a substantial portion, if not all, of Infinity's electronic records, including its database, websites, and customer portals, had been copied and transferred to IHS prior to October 27, 2021.[52]  Similarly, when asked if IHS had set up any computer system of its own, Hemmers testified that it had not.[53] Again, this response is clearly contradicted by the emails referenced herein.

48.     Defendants continue to use HASelect's Collateral, despite being ordered to turn over the same to HASelect pursuant to the Relief Order and Abandonment Order.  HASelect has not authorized Defendants' continued and wrongful use of HASelect's Collateral.  Moreover, Defendants have failed to turn over the Collateral despite HASelect's demands for the same, necessitating this Motion.

---

[47] *See* Transcript (Exhibit 20), p. 47, lines 1-11.

[48] *See* Exhibit 9.

[49] *See* Transcript (Exhibit 20), p. 56, lines 15-20.

[50] *See* Exhibit 9.

[51] *See* Transcript (Exhibit 20), pp. 52-54.

[52] *See* Exhibits 1, 2, 3, 4, 9, 10, and 11.

[53] *See* Transcript (Exhibit 20), p. 55, lines 23-25.

## ARGUMENT

**A.    A Preliminary Injunction Is Warranted in this Case.**

A preliminary injunction should be awarded if the moving party shows: (1) a strong likelihood of success on the merits of its claim, (2) the possibility of irreparable injury to the moving party, (3) a balance of hardships favoring the moving party, and (4) the advancement of public interest. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (emphasis in original). "Probability of success and possibility of irreparable harm can be viewed as two factors on a sliding scale so that as the required probability of success increases, the likelihood of irreparable harm that is required decreases." *Alcove Inv., Inc. v. Conceicao (In re Conceicao)*, 331 B.R. 885, 889 (9th Cir. BAP 2005).

Similar to what HASelect requests by way of the Motion, Courts have enjoined numerous defendants from wrongfully using and retaining collateral of a secured party. *See, e.g., Bank of Am., N.A. v. Yi*, 294 F.Supp.3d 62 (W.D.N.Y. 2018). In *Yi*, the Court granted a plaintiff's request for an order of seizure and preliminary injunction preventing defendants from further using or interfering with the plaintiff's interest in the collateral, which was security for a $16.2 million loan. *Id.* at 67. The Court issued the preliminary injunction despite taking note of the fact that such equitable relief in favor of the plaintiff would shut down defendants' businesses, which provided benefits to thousands of cancer patients, because defendants could not be allowed to continue to use the collateral based on the factors listed above at the expense of plaintiff. *Id.* at 66-67; *see also WM Capital Partners I, LLC v. BBJ Mortg. Servs.*, No. 10-10359, 2010 U.S. Dist. LEXIS 141749 (E.D. Mich. Aug 17, 2010) (issuing a preliminary injunction requiring defendants to turn over property and prevent further interference with the collateral, including but not limited to, accounts receivable, that served as security for a $2 million loan from plaintiff).

Here, the Court should grant the Motion and issue a preliminary injunction preventing

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  Defendants from wrongfully using HASelect's Collateral to continue Infinity's business through

2  IHS.

3  **B.    Defendants Should Be Enjoined from Further Wrongful and Unauthorized Use of HASelect's Collateral and Should Be Required to Deliver All Collateral to HASelect without Further Delay.**

5  HASelect enjoys a strong likelihood of success on the merits of its declaratory relief claims

6  and related unjust enrichment, conversion, and claim and delivery claims asserted in its Adversary

7  Complaint against Defendants.  Moreover, HASelect will suffer irreparable harm in the event that

8  Defendants are not enjoined from their wrongful and unauthorized use of HASelect's Collateral.  The

9  balance of hardships also tips in HASelect's favor as Infinity is indebted to HASelect for millions of

10  dollars and yet Defendants have jettisoned Infinity's assets (i.e., HASelect's Collateral) to Defendant

11  IHS to continue the same business as Infinity while trying to escape Infinity's debts and creditors.

12  Further, public interest favors creditors such as HASelect being able to enforce their contractual rights

13  and security interests in the Collateral over Defendants wrongfully using and retaining the Collateral

14  to create a continuing successor entity to Infinity in order to escape creditors and debts.

15  As all elements necessary to grant a preliminary injunction are present, the Court should grant

16  the Motion and require Defendants to return HASelect's Collateral as required by this Court's previous

17  Relief Order and Abandonment Order and prevent them from otherwise disposing or interfering with

18  HASelect's right to possess the Collateral.

19  *i.    HASelect Enjoys a High Likelihood of Success on the Merits of Its Claims*

20  HASelect has asserted multiple claims against Defendants regarding unauthorized use and

21  retention of HASelect's Collateral, including declaratory relief, conversion, unjust enrichment, and

22  claim and delivery.  HASelect has a high likelihood of success on these claims because it is

23  indisputable that Defendants are using HASelect's Collateral without authorization.

24  As shown by the evidence attached hereto, Defendants have taken, among other things,

25  computers, phones, domain names, and books & records that once belonged to Infinity and was

26  covered by the definition of Collateral in the MLA.  Indeed, by way of the MLA, Infinity granted a

27  security interest to HASelect over "all of its other personal property, including without limitation, all

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located…All Goods, Inventory, Equipment, Fixtures,…General Intangibles…and all other property now or at any time in the future in [Infinity's] possession" as well as all proceeds and all products and all books and records related to any of the foregoing.[54]

The computers, phones, and other tangible equipment used by Infinity that Defendants have now transferred to Defendant IHS undoubtedly constitutes "personal property" as well as "Goods" under the UCC.  *See* NRS 104.9102(qq) (defining "Goods" as all things that are movable).[55] Additionally, the domain name and compute software falls under the definition of "General Intangibles" under Nevada law.  *See* NRS 104.9102(pp).[56]  The related books and records that are wrongfully being utilized by Defendant IHS to continue an identical business to that of Infinity's are expressly mentioned in the MLA and Infinity indisputably granted a security interest in the same. Moreover, it cannot be disputed that HASelect perfected its security interest and is a secured creditor of Infinity with regards to all of the Collateral.[57]   As evidenced by the emails and communications attached hereto, all of the foregoing was undoubtedly transferred by Hemmers and Pantelas from Infinity to IHS around the time that Infinity filed its bankruptcy petition.

Defendants transfer of the Collateral from Infinity to IHS does not affect HASelect's security interest in the Collateral.  *See* NRS 104.9315(1) (stating that a security interest in collateral continues notwithstanding any sale or exchange or other disposition of the collateral).[58]   HASelect did not authorize Infinity to dispose of this Collateral, nor would HASelect consent to Infinity transferring the Collateral to a nearly identical business to avoid HASelect's liabilities.  In fact, to prevent against this very thing, HASelect required Infinity to agree to a covenant that it would continue operations under

---

[54] A copy of the MLA is on file in the Tecumseh Adversary Proceeding, Case No. 21-01167-abl as ECF No. 57-1, § 4.1.

[55] In the event that the Court determines that Illinois law is applicable here based on the choice of law provision in the MLA, Illinois statutes do not change the result.  *See* 810 ILCS 5/9-101(a)(44) (defining "Goods" as all things that are movable).

[56] *See also* 810 ILCS 5/9-101(a)(42).

[57] A copy of this UCC-1 filing is on file in the Tecumseh Adversary Proceeding as ECF No. 57-2.

[58] *See also* 810 ILCS 5/9-315(a)(1) (stating that a security interest continues in collateral notwithstanding a sale or lease or other disposition thereof).

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

its own name and would not transfer or consolidate with any other entity or transfer or sell any Collateral.[59]  Despite this, Defendants have caused Infinity to transfer the Collateral in violation of the MLA and the covenants therein.

Because the assets transferred from Infinity to IHS indisputably constitute HASelect's Collateral, HASelect has a high likelihood of success on its claims for relief seeking recovery of the Collateral.  First, this Court has already ordered any person or entity, with express references to Infinity's principals—Hemmers and Pantelas—to turn over all Collateral or copies thereof in their possession to HASelect.[60]  Noticeably, Infinity filed a non-opposition to HASelect's motions that ultimately led to both the Relief Order and Abandonment Order, indicating that it did not dispute HASelect's right to possess the Collateral.[61]  Put differently, this Court has already determined that HASelect should be the sole party in possession of the Collateral, showing that HASelect has a strong likelihood of success on the merits of any of its claims seeking recovery of the Collateral.

This, coupled with the irreparable harm suffered by HASelect requires that Defendants be enjoined from their wrongful conduct of continuing Infinity's business under a different name.

ii.    *HASelect Will Suffer Irreparable Harm by Defendants' Continued Wrongful Use of HASelect's Collateral.*

Having established a high likelihood of success on the merits of its claims, HASelect need only establish the possibility of irreparable harm by Defendants' conduct in transferring and refusing to turn over the Collateral.  Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  However, the pleading of monetary damages does not preclude a finding of irreparable harm; indeed, courts have found irreparable harm to occur when there is a risk of loss or destruction of collateral in which a secured party holds a security interest.  *See, e.g.*, *Yi*, 294 F.Supp.3d at 80 ("[A]lthough injuries compensable by monetary damages ordinarily do not justify the remedy, '[a] preliminary injunction may issue to preserve assets as security for a potential monetary judgment

---

[59] A copy of the MLA is on file in the Tecumseh Adversary Proceeding as ECF No. 57-1, § 7.1.

[60] *See* ECF Nos. 96 and 97 in the Bankruptcy Case.

[61] *See* ECF No. 80 in the Bankruptcy Case.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.'"); *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86–87 (2d Cir. 1996)); *Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*, No. 5:12-CV-01864 EJD, 2012 WL 1309151, at *3 (N.D. Cal. Apr. 16, 2012) ("The court finds that the strong possibility of continued asset dissipation supports the issuance of a TRO.").

Here, this is exactly what Defendants did with HASelect's Collateral—they transferred it to IHS leaving Infinity's cupboards bare.  The Collateral and HASelect's security interest in the same was an essential element of the MLA between Infinity and HASelect.  The loss of this Collateral severely limits HASelect's rights under the MLA and leaves it with no effective recourse against Infinity, who promised not to transfer or dispose of the Collateral.  The transfer of Collateral has deprived HASelect of its bargained-for remedy under the MLA to foreclose on the Collateral to recover unpaid funds loaned to Infinity.  Defendants' transfer of Collateral to IHS following the Petition Date and their use of Collateral to continue Infinity's business operations through IHS also clearly violated the automatic stay.  Moreover, Defendants' wrongful transfer of and continuing failure to surrender Collateral is an obvious violation of this Court's previously entered Orders.

The possibility of irreparable harm further exists if Defendants again transfer the Collateral to another entity (which is entirely possible considering Defendants already transferred the Collateral in violation of the MLA) rendering IHS judgment proof.  *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment."); *see also*, *Green v. Drexler (In re: Feit & Drexler, Inc.),* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction . . . . this is an appropriate case for the issuance of injunctive relief to prevent [the defendant] from making uncollectible any judgment.") (internal

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

quotations and citations omitted); *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (upholding a finding of irreparable harm where there was a "substantial probability that [plaintiff] would be unable to collect a judgment against [defendant].") (citing *Molex, Inc. v. Nolen,* 759 F.2d 474, 477–78 (5th Cir.1985) (per curiam) (recognizing that a plaintiff's inability to obtain monetary compensation from an insolvent defendant satisfies the irreparable harm requirement)).

Further, HASelect faces irreparable harm resulting from Defendants' destruction of Infinity's books and records, which are part of the Collateral, and the potential loss of vital evidence in its ongoing adversary proceeding against Tecumseh. Defendants have undeniably deleted emails and other records and have made numerous false statements under oath in attempting to conceal their retention of Infinity's business records and their efforts to continue Infinity's business operations through IHS. Based on their past behavior, there is substantial risk that Defendants may again attempt to transfer or conceal the Collateral, which would further impair HASelect's ability to identify, locate, and obtain possession of the remaining Collateral in Defendants' possession as well as HASelect's ability to prosecute its claims against Tecumseh.

Thus, the possibility of irreparable harm exists here, and Defendants should be required to return all Collateral to HASelect as ordered by this Court previously in its Relief Order and Abandonment Order.

### iii. *The Balance of Hardships Weighs in Favor of Granting the Motion.*

When considering whether to grant a preliminary injunction, the Court should also take into account the competing claims of injury and "consider the effect on each party of granting or withholding the requested relief." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 866-67 (9th Cir. 2017) (granting a request for a preliminary injunction despite allegations that the injunction would destroy a defendant's "fledgling business" and finding that defendant's wrongful conduct did not merit equitable protection). Other courts, similar to *VidAngel*, have granted injunctions despite allegations that the granting of the same would result in a new or continued business to close its doors. *See, e.g.*, *Yi*, 294 F.Supp.3d at 81 (granting an injunction which would allegedly shut down a business that

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

treated thousands of cancer patients because the governing agreement entitled plaintiff to possession and sale of the Collateral and their hardships were not actually caused by having to turn over the Collateral).

Here, like the plaintiff in *Yi* who was issued a preliminary injunction, HASelect was granted a security interest in all of Infinity's personal property (i.e., the Collateral). Defendants have removed the Collateral from Infinity's possession and placed it into their own hands without any consent or authorization from HASelect. This is much worse than the conduct of the defendants in *Yi*, where no allegations were made regarding the transfer of assets from the contracting party to a related successor entity. Indeed, Defendants' inequitable conduct should be viewed harshly and should weigh heavily against Defendants in the balancing of hardships as parties who do not act equitably do not merit equitable protection. *See VidAngel, Inc.*, 869 F.3d at 866-67. All of this is especially concerning considering that Defendants were expressly ordered to turn over all Collateral in their possession to HASelect via the Relief Order and Abandonment Order. Indeed, the longer that HASelect is left without its Collateral, the more likely it is that the Collateral will become worthless.

Further, Defendants Hemmers and Pantelas made several false statements while testifying under oath during Infinity's meeting of creditors in an attempt to conceal their transfer of the Collateral from Infinity to IHS and the ongoing use of that Collateral by IHS. As a result, HASelect does not know the full extent of the Collateral that Defendants have retained and, as such, faces greater hardship in discovering the full extent of Defendants' wrongful conduct. Defendants should not be allowed to benefit from their improper attempts to conceal the Collateral and continue the business operations of Infinity under a different name while misusing the bankruptcy process to avoid payment of Infinity's debts. The balance of hardships also weighs heavily in favor of HASelect and granting the Motion. *See VidAngel, Inc.*, 869 F.3d at 866-67.

iv.  <u>*The Public's Interest Favors Enforcing the Parties' Agreement and this Court's Orders.*</u>

The final factor to be reviewed is that of the public's interest in granting the injunction. "The public interest inquiry primarily addresses [the] impact on non-parties rather than parties." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002). "[P]ublic interest

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

strongly favors enforcing contracts." *See Jump Operations, LLC v. Merryman*, No. 2:22-cv-00575, 2022 U.S. Dist. LEXIS 66373, *11 (D. Nev. Apr. 8, 2022). Indeed, all that HASelect is attempting to do is enforce the MLA as written, which indisputably provides HASelect a security interest in the Collateral.

Further, granting the motion and issuing an injunction will simply enforce this Court's prior orders requiring surrender of all Collateral and copies thereof to HASelect. "[P]ublic interest favors prompt enforcement of a court's orders. Public interest also favors ensuring compliance with those orders…." *In re Davis*, No. 1:10-bk-17214, 2019 Bankr. LEXIS 3590, *14 (C.D. Cal. Bankr. Nov. 21, 2019); *see also Barney v. Lane (In re Lane)*, No. 11-20398, 2021 Bankr. LEXIS 1538, *33 (Wy. Bank. Mar. 4, 2021) ("The courts and the public also have strong interests in the finality and observance of…court orders."); *Hill v. Schilling*, No. 3:07-cv-2020, 2018 U.S. Dist. LEXIS 206799, *51-52 (N.D. Tex. Dec. 7, 2018) ("public interest supports enforcement of prior court orders."). Here, the Court expressly ordered that anyone, including Hemmers and Pantelas, turn over all Collateral and copies thereof to HASelect. HASelect has made demands on Defendants, yet they have failed to comply with these previous orders.

Further, the evidence submitted herewith and on file in the related proceedings shows that Defendants made several material misrepresentations regarding their retention and ongoing use of Collateral and their continuation of Infinity's business operations through IHS. Defendants should not be rewarded for their misconduct in attempting to undermine the bankruptcy process. The public interest weighs in favor of granting the Motion. The Court should issue an injunction precluding Defendants from continuing to use the Collateral and requiring them to turn the same over to HASelect immediately as previously ordered by this Court.

### C.    An Injunction Should Issue without HASelect Posting a Bond.

Although Fed. R. Civ. P. 65(c) contemplates the posting of security for the issuance of an injunction, such a requirement is not necessary. Indeed, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original). "The Ninth Circuit has noted that a likelihood of success on

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

the merits…tips in favor of a minimal bond or no bond at all." *Nelson Stud Welding v. Quall's Stud Welding Prods.*, No. 2:10-cv-01020, 2010 U.S. Dist. LEXIS 161381, *7 (D. Ariz. Sept. 30, 2010) (citing *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985)).  Specifically, courts have held that no bond is required when a party is in possession of the moving party's collateral.  *See Jem D Int'l (Mich.), Inc. v. JJD Produce, LLC*, No. 22cv383, 2022 U.S. Dist. LEXIS 72040, *9-10 (S.D. Cal. Apr. 19, 2022).

As shown above, HASelect enjoys a high likelihood of success on the merits on its claims that Defendants improperly transferred Infinity assets included in the Collateral to IHS in an attempt to continue Infinity's business operations under a different name while avoiding Infinity's obligations to its creditors.  The public interest weighs heavily in favor of ensuring that the bankruptcy process is not used for such purposes and that this Court's orders are enforced as written.  Courts in the Ninth Circuit have held that there is no need to post security when there is a significant public interest at stake.  *See Johnson*, 572 F.3d at 1086.  Accordingly, the Court should not penalize HASelect by requiring it to post a bond when this Motion would not have been necessary had Defendants complied with this Court's previous orders.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Motion in full and issue an injunction requiring Defendants to turn over all Collateral (and all copies thereof) in their possession as required by this Court's previous orders and enjoining Defendants from further interfering with, using, or possessing HASelect's Collateral. A proposed order granting this Motion is attached hereto as <u>Exhibit 21</u>.

DATED this 15th day of July 2022.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## CERTIFICATE OF SERVICE

1.    On July 22, 2022, I served the following document(s): **MOTION FOR PRELIMINARY INJUNCTION TO PROHIBIT DEFENDANTS FROM USING OR TRANSFERRING COLLATERAL**

2.    I served the above document(s) by the following means to the persons as listed below:

☐    a.    ECF System:

☒    b.    United States mail, postage fully prepaid:

Anne Pantelas
Oliver Hemmers
Infinity Health Solutions LLC
281 Gingerbread Street
Henderson, Nevada 89012

☐    c.    Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☒    d.    By direct email (as opposed to through the ECF System):

Ogonna Brown, Esq.
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
obrown@lewisroca.com
*Counsel for Defendants Anne Pantelas, Oliver Hemmers, and Infinity Health Solutions, LLC*

☐    e.    By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐       f.      By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 22, 2022.

By: _/s/ *Bart K. Larsen, Esq,*_____

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28